UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>3.   GERMAN HERNANDEZ ESCOBAR<br>      a/k/a "TERIBLE,"<br><br>4.   NOE SALVADOR PEREZ VASQUEZ<br>      a/k/a "CRAZY,"<br><br>15.  LUIS SOLIS VASQUEZ<br>      a/k/a "BRUJO,"<br><br>19.  JOSE RENE ANDRADE<br>      a/k/a "TRISTE,"<br>      a/k/a "INNOCENTE"<br><br>20.  HECTOR ENAMORADO<br>      a/k/a "VIDA LOCA,"<br><br>                              **Defendants.** | No. 15-10338-FDS |

**GOVERNMENT'S CONSOLIDATED OPPOSITION
TO DEFENSE MOTIONS FOR SEVERANCE**

The United States opposes and files this consolidated response to the motions for severance filed by Noe Perez Vazquez, a/k/a "Crazy," *see* Dkt. No. 2074, defendant German Hernandez Escobar, a/k/a "Terible," *see* Dkt. No. 2082, and defendant Jose Andrade, a/k/a "Triste," a/k/a "Inocente," *see* Dkt. No. 2108.

The Court has correctly dismissed similar motions filed by co-defendants in prior trial groupings, and the Court should dismiss this set of motions as well. This opposition summarizes some of the government's prior arguments against additional

1

severance, which apply with equal force to the arguments for severance raised by the defendants in their recent motions. In addition, the government comments briefly on certain additional arguments raised by the defendants in their recent motions. For the reasons below, all three motions for severance should be **DENIED**.

## ARGUMENT

**1. The complaining defendants are part of the same charged racketeering conspiracy and they should be tried together.**

A number of important principles counsel against further severance of the three complaining defendants who were indicted together as being members of the same alleged racketeering conspiracy.

*First*, there is a strong preference in the federal system for joint trials of defendants charged in the same indictment. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."); *United States v. DeLeon*, 187 F.3d 60, 63 (1st Cir. 1999) ("This court's rule is that those who are indicted together should be tried together.") (citation and quotation omitted).

*Second,* the preference for joinder applies equally in cases involving racketeering conspiracies. *United States v. Zannino*, 895 F.2d 1, 16 (1st Cir. 1990) ("This court, and other courts of appeals, have consistently held that offenses committed pursuant to the same (charged) racketeering enterprise and conspiracy may be joined in a single indictment….").

*Third*, even assuming that some of the Group Two Defendants have antagonistic defenses—and to date, the complaining defendants have provided no reciprocal discovery or articulated any antagonistic defenses—"The law in this circuit is well settled; antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other." *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir. 1983) (internal citations and quotations omitted).

*Fourth*, even assuming that certain evidence raises concerns about prejudicial spillover, a severance should not be granted where "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539; *see also United States v. Houle*, 237 F.3d 71, 75 (1st Cir. 2001) (rejecting arguments about spillover, unfair prejudice, and "guilty by association" atmosphere because, among other things, "the district court took adequate measures to safeguard against the possibility of spillover prejudice by repeatedly instructing the jury to consider the evidence separately as to each defendant"); *United States v. Houlihan*, 92 F.3d 1271, 1284 (1st Cir. 1996) ("As long as the district court limits the admission of the challenged evidence to a particular defendant or defendants, the other defendants cannot rewardingly complain unless the impact of the evidence is so devastating that, realistically, instructions from the bench cannot be expected to repair the damage."). Perez Vazquez, Hernandez Escobar, and Andrade have not demonstrated why less drastic measures such as limiting instructions cannot suffice in this case, and their motions for severance should be denied on that ground alone.

**2. Perez Vazquez's arguments for severance are meritless, there is no <u>*Bruton*</u> <u>violation, and the Court should deny Perez Vazquez's motion</u>.**

Moving on to each defendant's more specific arguments, Perez Vazquez a/k/a Crazy seeks relief from joinder and asks that his case be severed from that of Hernandez Escobar a/k/a Terible. Dkt. No. 2074. Perez Vazquez argues that because the government intends to introduce certain jail calls made by Hernandez Escobar, this will lead to a Confrontation Clause issue because Perez Vazquez will not be able to cross-examine Hernandez Escobar. *Id.* at pp. 1-2. Perez Vazquez's arguments fail because the jail calls by Hernandez Escobar are admissible against Perez Vazquez as co-conspirator statements. Consequently, the admission of this evidence raises no *Bruton* issue or Confrontation Clause violation.

The First Circuit has stated unequivocally that there is no *Bruton* issue if a statement is admitted under the co-conspirator exception to the hearsay rule:

> *Bruton* held that a Sixth Amendment violation occurs when a court, at a joint trial, admits one defendant's confession, which implicates the other defendant, without the opportunity for cross-examination. The Court was careful not to take a position on whether the outcome would have been different had the confession been admitted under a hearsay exception. ***We have answered this question, holding unequivocally that "there is no Bruton problem" when a "statement falls within the coconspirator exception to the hearsay rule."***

*United States v. Sanchez-Berrios*, 424 F.3d 65, 76 (1st Cir. 2005) (quoting *United States v. Arruda*, 715 F.2d 671, 685, n. 11 (1st Cir. 1983) (internal citations omitted) (emphasis added)). Based on these well-established principles, the First Circuit held in *Sanchez-Berrios* that it was "entirely proper" to admit an audiotaped conversation between a co-defendant and a third person that was made in furtherance of the conspiracy. *Id.* The same result is warranted here.

4

The only argument advanced by Perez Vazquez as to why the jail calls by Hernandez Escobar were not in furtherance of the conspiracy is as follows:

> Here, Hernandez had been arrested and was in custody at the Suffolk County Jail, and he purportedly no longer held the leadership role with MS-13 that he was alleged to have had prior to his arrest. It is often the case that the end of a conspiracy occurs with an arrest, withdrawal or indictment. *United States v. Smith*, 623 F.2d 627, 631 (9th Cir. 1980), and such was the case here. Hernandez's statements were frequently about criminal acts he had committed, his inquiries as to criminal acts committed by others, or were made in braggadocio or for self-dealing purposes, not in furtherance of a conspiracy with Vasquez.

Dkt. No. 2074 at pp. 1-2. Neither the law nor the facts support this argument.[1]

"Upon joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues until he withdraws." *Smith v. United States*, 568 U.S. 106, 107 (2013). "The mere cessation of activity in furtherance of the conspiracy does not constitute withdrawal." *United States v. Ngige*, 780 F.3d 497, 503–04 (1st Cir. 2015). "To withdraw from a conspiracy, a person must 'act affirmatively either to defeat or disavow the purposes of the conspiracy.'" *United States v. Ponzo*, 853 F.3d 558, 579–80 (1st Cir. 2017) (citing *United States v. Paz-Alvarez*, 799 F.3d 12, 26 (1st Cir. 2015). "Typically, that requires either a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the

---

[1] The only case cited by the defendant is from the Ninth Circuit, where the court stated that "Withdrawal from a conspiracy requires a disavowal of the conspiracy or an affirmative action that would have defeated the purpose of the conspiracy, or 'definite, decisive and positive' steps to show that the conspirator's disassociation from the conspiracy is sufficient," and the court went on to hold that "there was no such withdrawal here." *Smith*, 623 F.2d at 631. The rest of this section discusses First Circuit law, which authoritatively and similarly makes clear that there was no such withdrawal here.

enterprise and its goals." *United States v. Piper,* 298 F.3d 47, 53 (1st Cir. 2002) (citations omitted). "This standard [for withdrawal from a conspiracy] is 'strict' and not easily met." *United States v. Ciresi,* 697 F.3d 19, 27 (1st Cir. 2012) (citation omitted). Simply getting arrested does not automatically ends the conspiracy. *See, e.g., United States v. Mehanna,* 735 F.3d 32 (1st Cir. 2013) ("Avoiding contact with one's coconspirators, without more, is not in any way, shape, or form tantamount to abandoning the conspiracy.").

Far from establishing that Hernandez Escobar had affirmatively "disavowed the purposes of the conspiracy," or that the jail calls were a "communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals," *see supra*, the jail calls show that Hernandez Escobar was affirmatively trying to further the conspiracy. The jail calls contain dozens of statements in furtherance of the conspiracy, but for present purposes, the government quotes three sub-parts of just one call to show examples of Hernandez Escobar a/k/a Terible making statements in furtherance of the conspiracy.

<u>Jail Call 26 on April 4, 2015</u>:

- Statements to MS-13 member asking him to ensure that clique dues are collected and sent down to El Salvador.

    TERIBLE:   And the other dude, SECO, and the other one, did they collect the $20 per week?

    INQUIETO:  I think he's collecting it, dude.

    TERIBLE:   Because you mustn't forget about those numbers; they have to be collected regularly… Because they have to be turned over to Mecha, buddy.

    INQUIETO:  No problem. Changing them in dollars because he wants them for down there.

    TERIBLE:  Yes. Tell MECHA, buddy. Tell him that it all has to be sent down on the 13th.

- Statements to MS-13 member about whether co-defendant Perez Vazquez a/k/a Crazy (*i.e.*, the co-defendant seeking severance) is now the leader or "First Word" of the clique and how the succession plan should operate:

    INQUIETO:  And what's going on, does CRAZY have the Word?

    TERIBLE:  No, I don't know. Why?

    INQUIETO:  Because he had said that he had it.

    TERIBLE:  So long as no one has had a meeting, no one can grab it just like that, buddy. The one who gets it is Second Word.

    INQUIETO:  Didn't NINO have it?

    TERIBLE:  No, NINO goes for Third… So long as no one has a meeting, no one, no one, can be First Word, buddy.

    INQUIETO:  No problem, then.

    TERIBLE:  … The dudes, dudes, dudes have to meet! … Right now, no one has First Word. It's simply that no one has the First Word, buddy.

- Statements to co-defendant Andrade a/k/a Inocente (*i.e.*, the *other* co-defendant seeking severance) about who has control of the "register" or finances of the clique, and a response by Andrade that Perez Vazquez (*i.e.*, the *first* co-defendant seeking severance) supposedly has the register:

    TERIBLE:  Who has the register today?

    INOCENTE:  Supposedly CRAZY does. He said he would decide to whom he would give it, buddy.

    TERIBLE:  He gives the register to MECHA. Look here, I don't know what's going on, but it's NINO who will see who gets it. Talk to NINO, but CRAZY can't grab it from him.

7

> INOCENTE: Okay, that's fine. From that thing, I will put in 500 dollars for you, dude, because we have collected some money and it seems we're going to need another thousand dollars at least.

Given these types of statements by Hernandez Escobar to co-conspirators about the ongoing activities of other co-conspirators, Perez Vazquez's argument that the conspiracy had ended and Hernandez Escobar had withdrawn from the conspiracy by virtue of his arrest is meritless. There is no *Bruton* issue and Perez Vazquez's motion to sever should be denied.

### 3. Jose Andrade's motion for severance should also be denied.

Andrade filed a separate motion for severance arguing as follows:

> [A] joint trial of Mr. Andrade with Messrs. Enamorado, Perez-Vazquez and Solis-Vazquez would unfairly prejudice Mr. Andrade by exposing the jury to a wide range of highly prejudicial and inflammatory information and evidence—including evidence relating to the predicate act of murder of Mr. Javier Ortiz and the attempted murder of Victim No. 25, allegedly by Mr. Enamorado and with the alleged assistance of Mr. Perez-Vazquez and Mr. Solis-Vazquez—this is unconnected to Mr. Andrade.

Dkt. No. 2108 at pp. 1-2. Again, neither the facts nor the law support this argument.

As a factual matter, as footnote 1 of Andrade's motion acknowledges, "the government alleges that the weapon used to kill Mr. Ortiz was ultimately recovered from Mr. Andrade by Somerville Police a couple of weeks after Mr. Ortiz was killed." *Id.* at n. 1. Given that the murder weapon was recovered from Andrade, there is a relevant factual connection between the Ortiz murder and Andrade.

More importantly, as a legal matter, there is no "unfair prejudice" associated with presenting this evidence in a conspiracy case, and adopting Andrade's argument

8

would require ignoring black letter principles of conspiracy law.  As the Supreme Court has made clear, "Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot."  *Smith*, 568 U.S. at 111 (citations and quotations omitted) (citing cases going back over a century).

Here, having joined the MS-13 conspiracy, Andrade is responsible for the acts of his co-conspirators in pursuit of their common plot (in this case, their common plot to target and kill rival gang members).  Far from being "unconnected" to Andrade and resulting in "unfair prejudice" or "prejudicial spillover," the murder of a suspected rival by Andrade's co-conspirators—using a gun later seized from Andrade—is relevant and probative evidence against Andrade.  No severance is warranted and Andrade's motion should be denied.

4.      **Hernandez Escobar's arguments for severance are similarly flawed.**

Finally, Hernandez Escobar a/k/a Terible filed his own motion for severance, *see* Dkt. No. 2082, also raising arguments about prejudicial spillover and *Bruton* issues.  Hernandez Escobar's motion should similarly be denied.  Hernandez Escobar makes three arguments in support of severance, none of which carries the day.

*First*, Hernandez Escobar "incorporates by reference his *ex parte* response to Trial Groupings filed on April 25, 2017."  Motion at p. 1.  For obvious reasons, the government cannot respond to arguments raised *ex parte*, but the government notes that the defendant has not provided any reciprocal discovery or offer of proof showing

that Hernandez Escobar has antagonistic defenses or Constitutional concerns warranting severance. In any event, "The law in this circuit is well settled; antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other." *Arruda*, 715 F.2d at 679.

*Second*, Hernandez Escobar argues that a "trial with codefendants from different cliques and charged with a murder with which he is alleged to have had no involvement or knowledge will prejudice him in the eyes of the jury." Motion at p. 1. Again, established law on criminal conspiracies forecloses this argument. Having joined the MS-13 conspiracy, Hernandez Escobar is responsible for the acts of his co-conspirators in pursuit of their common plot, and he cannot claim that he will be unfairly prejudiced by a joint trial that discusses another murder committed by his co-conspirators. *See Smith*, 568 U.S. at 111. Similar to why the Court must reject Andrade's claims of unfairness and prejudicial spillover, the court must reject Hernandez Escobar's arguments for severance as well. *See supra* at § 3. *See also United States v. Darden*, 70 F.3d 1507, 1527 (8th Cir. 1995):

> The [defendants'] argument is fatally flawed, however, because they gloss over the fact that they were indicted as members of a RICO conspiracy that included all of their co-defendants. Each defendant may be held accountable for actions taken by other defendants in furtherance of the conspiracy, and thus all of the evidence offered at trial relating to the activities of the [enterprise], regardless of whether [the individual defendants] directly participated in those activities, would be admissible against them if they had been given separate trials.

Indeed, courts routinely reject "spillover prejudice" arguments in RICO cases because the challenged evidence that will purportedly result in "spillover" would be admissible against the defendants even if they were all granted individual trials:

10

> Appellants' "spillover" claim is thus misnamed. The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants and that individual trials should have been held to avoid that prejudice. In the present case, however, the evidence in question is relevant to the RICO charges against all defendants and most probably would have been admitted even if defendants had been accorded individual trials.

*United States v. DiNome*, 954 F.2d 839, 843–44 (2d Cir. 1992) (citations omitted).[2]

*Third*, Hernandez Escobar raises a *Bruton* issue by claiming severance is required because "Mr. Hernandez-Escobar will be prejudiced at a joint trial with Mr. Andrade because Mr. Andrade's recorded statements directly implicate Mr. Hernandez-Escobar in the Villanueva murder." Motion at p. 3. Hernandez is under the mistaken belief that "Mr. Andrade's statements to CW-5 are not independently admissible against Mr. Hernandez-Escobar" and there will be a *Bruton* violation because he cannot cross-examine Andarade. *Id.* Contrary to Hernandez Escobar's

---

[2]   Hernandez Escobar also makes a related argument that severance is warranted because "the evidence against Mr. Hernandez-Escobar is far from overwhelming" and "against this backdrop, trial with the other Group 2 defendants will likely severely prejudice Hernandez-Escobar by making it appear that the government's evidence against him is far more substantial than it actually is." Motion at pp. 1-2. This argument is similarly unavailing.

"[D]isparity between the relative culpability of co-defendants does not *entitle* a defendant to severance." *United States v. DeCologero*, 530 F.3d 36, 55 (1st Cir. 2008) (emphasis in original). "There is always some prejudice in any trial where more than one offense or offender are tried together—but such "garden variety" prejudice, in and of itself, will not suffice." *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990) (citations omitted). "Even where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others, we have been reluctant to second-guess severance denials." *Id.* (finding no error in denial of severance). "Further, such disparity [in evidence or culpability] is not uncommon in RICO cases, nor is it unusual in such cases for a co-defendant to be charged with only a subset of the crimes alleged in the indictment." *DeCologero*, 530 F.3d at 55 (finding no error in denial of severance).

11

assertions, Andrade's statements are admissible against Hernandez Escobar as co-conspirator statements made in furtherance of the conspiracy.

While in jail with Andrade, CW-5 recorded Andrade for hours making statements about racketeering activity by MS-13 members, including some of the co-defendants that will be part of this trial group. The government will establish that these statements were "in furtherance" of the MS-13 conspiracy. To be deemed "in furtherance," a statement "need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can be said to advance the goals of the conspiracy in some way." *United States v. Martinez-Medina*, 279 F.3d 105, 117 (1st Cir. 2002). *See also United States v. Rodriguez*, 525 F.3d 85, 101 (1st Cir. 2008) ("A statement is in furtherance of the conspiracy if it tends to advance the objects of the conspiracy as opposed to thwarting its purpose."). Statements in furtherance of the conspiracy include "comments designed to assist in recruiting potential members" and "to inform other members about the progress of the conspiracy." *United States v. Johnson*, 200 F.3d 529 (7th Cir. 2000); *See also United States v. Sanchez-Berrios*, 424 F.3d 65, 75 (1st Cir. 2005); *United States v. Kaplan*, 832 F.2d 676, 685 (1st Cir. 1987). Here, Andrade's statements to CW-5 furthered all those objectives (the government will discuss this issue further in its opposition to Hernandez Escobar's separate motion in limine to exclude these statements).

Finally, the fact that Andrade made the incriminating statements in furtherance of the conspiracy to a government informant is immaterial. Co-conspirator statements to a government informant in furtherance of the conspiracy

are admissible under a *Petrozziello* analysis.  *See, e.g., Ciresi*, 697 F.3d at 28 ("[I]t is immaterial that the person to whom the [co-conspirator's] statement is made is a government informant…as long as the statement itself was made in furtherance of the common scheme").  At bottom, there is no *Bruton* violation, Andrade's statements to CW-5 are admissible against Hernandez Escobar, and Hernandez Escobar's motion for severance should be denied.

## CONCLUSION

For the reasons above, the government requests as follows:

(1)   The Motion for Relief from Prejudicial Joinder by defendant Noe Perez Vazquez, a/k/a "Crazy" (Dkt. No. 2074) should be **DENIED**.

(2)   The Motion for Severance by German Hernandez Escobar, a/k/a "Terible" (Dkt. No. 2082) should be **DENIED**.

(3)   The Motion for Severance by defendant Jose Andrade, a/k/a "Triste," a/k/a "Inocente" (Dkt. No. 2108) should be **DENIED**.

    Respectfully submitted,

    ANDREW E. LELLING
    United States Attorney

By:  /s/ Kunal Pasricha
    KUNAL PASRICHA
    GLENN A. MACKINLAY
    CHRISTOPHER POHL
    KELLY BEGG LAWRENCE
    Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the Court's ECF system on March 12, 2018, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

         By: /s/ Kunal Pasricha
            KUNAL PASRICHA
            Assistant United States Attorney