UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.                                CR. NO. 15-10338-FDS

HECTOR ENAMORADO

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

This memorandum is prepared to assist the Court in the sentencing of Hector Enamorado who was found of guilty of one count of a nineteen count indictment in which he was charged in Count Two with Conspiracy to Conduct Enterprise Affairs through a Pattern of Racketeering Activity in violation of 18 U.S.C. § 1962(d).

**1.   The offense:**

The indictment in this case describes the origin, organization, and stated purpose of the MS-13 which is labeled a "transnational criminal organization" by the government. Enamorado is alleged to be a "homeboy" member of the Chelsea Locos Salvatrucha (CLS) clique of MS-13. PSR ¶ 22. He was charged as being part of a conspiracy to carry out the purpose and violent business of the organization. Enamorado continues to deny that he is a member of MS-13 or that he has any affiliation with the group.

After a multi-week trial, Enamorado was found guilty of Count II, RICO Conspiracy. The jury found that he was responsible for the shooting of two individuals in an apartment in Chelsea on December

14, 2014. One person died. The second man survived the shooting. PSR ¶ 25. It was alleged that Enamorado went to the address in Chelsea where a woman on the third floor ran a non-licensed after hours establishment where he encountered the men who had attacked, beat him, and burned him with a cigarette. He called for a gun and received a .380 cal. semiautomatic pistol and used it to shoot the men. PSR ¶¶ 25-28.

2.    **Enamorado's advisory guideline range:**

Mr. Enamorado **<u>disagrees</u>** with the PSR calculation of the Base Offense Level of 43 pursuant to USSG §2A1.1(a). PSR ¶ 45. He argues that the guideline level should not exceed **<u>38</u>** which is the BOL for Second Degree Murder based on USSG § 2A1.2. Likewise, the Adjusted Offense Level should be **38** in PSR ¶ 50; and Total Offense Level PSR ¶ 64 should be **38.**

3.    **Criminal History:**

The Presentence Report has indicates that Enamorado's Criminal History Category is II based upon (a) a 2008 conviction for wanton destruction of property, and (b) a 2015 assault and battery.

The wanton destruction of property involved the Enamorado punching out a glass window while apparently under the influence of alcohol. He was given a sentence of one year on probation and successfully completed the term. PSR ¶ 70.

The assault and battery conviction involved a jail fight while

awaiting trial on the state indictment. The guilty finding was filed. PSR ¶ 71.

Neither of these charges is a particularly serious criminal offense and do not constitute a pattern or habit of criminal behavior. Placing Enamorado in Criminal History Category II grossly overstates his past criminal behavior and criminal history.

## 4. The Court's Consideration of § 3553(A) factors:

One of the factors to be considered is the guideline range, but the Supreme Court has firmly instructed that sentencing courts "may not presume that the guideline range is reasonable." Gall v. United States, 128 S. Ct. 586, 596 (2007) (citing Rita v. United States, 127 S. Ct. 2456 (2007)). Rather a sentencing court must make an "individualized assessment based on the facts presented." Gall, supra at 597. Above all, a court's final determination of sentence must reflect "§ 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in

§ 3553(a)(2)." See Kimbrough v. United States, 128 S. Ct. 558, 575 (2007). The defendant addresses the factors here.

**Nature and circumstances of the offense and the history and characteristics of the defendant:**

The offense for which Enamorado was convicted is most serious indeed. However, as the testimony at trial established Enarmorado was likely under the influence of alcohol and drugs at the time of the offense. This is established in the testimony of one of the

cooperating witnesses who demurred when discussing whether a gun should be provided to Enamorado. The informant indicated that Enamorado was drunk or high and should not be trusted with a gun.

Additionally, at the time of his arrest Enamorado was taken to the Chelsea police station where he was questioned. He told police that on the night of the shooting he had ingested a copious amount of drugs and alcohol that evening and blacked out at some hour before the time of the shooting. He did relate that when he awoke the next morning he had a sense that "something bad" had happened.

### A. Personal and Family Life:

Mr. Enamorado is a permanent legal resident of the United States. He is married and has two daughters, ages 16 and 17. As set out in the PSR at ¶¶ 93-95, one daughter is severely health-compromised and requires special care and treatment. In light of her condition, she is able to maintain her studies in the Chelsea public school system. His other daughter also suffers from ongoing health problems as detailed in the PSR.

Mr. Enamorado's wife chose to stay with him while he fought the charges against him and as he faces a lengthy prison sentence. She and the children visit Mr. Enamorado twice a month and speak with him frequently by telephone. PSR ¶ 95.

A series of letters from family and supporters is attached hereto as an exhibit.

**B. Work History:**

Mr. Enamorado maintained a substantially consistent employment history from 2005 to the time of his arrest in 2015. He was employed for two years at Saratoga Salad Dressing Co. for a period of five years (2005-2010) and at various companies such as New England Coffee Company and Piantadosi Baking Company (2012-2014). PSR ¶¶ 105, 106.

**C. Education:**

Mr. Enamorado completed only six years of formal schooling in Honduras. While in pretrial detention he completed ESL classes and improved his English language skills.

**2. Need for Sentence Imposed:**

To be sure, punitive conditions must be imposed in order to punish a defendant and to promote respect for the law.

**3. Sentence available:**

The Court has the statutory authority to sentence to life or to a specified term of months in custody.

**4. Sentencing Range Established by the Guidelines:**

The U.S.S.G. sentencing range calculated by the Probation is Life based upon the calculation discussed above. Mr. Enamorado disagrees with that calculation on the basis for the following:

a. Defendant submitted his Proposed Jury Instructions addressing Murder on March 19, 2018 (Dkt. 2200). He requested that

the Court instruct the jury in accordance with the Massachusetts Jury Instructions on Murder. These instructions allowed the jury to select the degree of murder to be found in the event that the crime of murder were to be found.

b. The jury was instructed on April 19, 2018. The Court's instruction included the instruction on second degree murder and was not requested to make a finding based on first degree murder.

Based upon the Court's instruction and the jury verdict, the base offense level pursuant to USSG § 2A1.2 should be calculated as **38**, reflecting the crime of second degree murder.

**5. Conclusion:**

For all the reasons set forth above, Hector Enamorado respectfully requests that the Court impose a sentence consistent with the sentencing calculation of Criminal History Category I, Level 38. Therefore, he requests that the Court impose the sentence of 240 months followed by 5 years of supervised release.

Respectfully submitted,
HECTOR ENAMORADO
By his attorney,

**/s/ *James J. Cipoletta***

James J. Cipoletta
MA Bar No. 084260
Citizens Bank Building
385 Broadway - Suite 307
Revere, MA 02151
Telephone 781.289.7777

September 25, 2018

<u>Certification</u>

I certify that this document, filed through the ECF system, provides electronic copies to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

<u>/s/ James J. Cipoletta</u>