UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HECTOR ENAMORADO, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Criminal Action No. <br> 15-10338-FDS |

**MEMORANDUM AND ORDER ON PETITIONER'S MOTIONS TO VACATE**

SAYLOR, C.J.

Petitioner Hector Enamorado has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel at trial and during his sentencing. For the reasons set forth below, the motion will be denied.

**I.   Background**

On May 15, 2017, a federal grand jury returned a fifth superseding indictment charging Hector Enamorado with conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). On April 23, 2018, following a nineteen-day trial, a jury convicted him of that charge and returned a special finding that he had committed or knowingly participated in the December 2014 murder of Javier Ortiz. Enamorado was sentenced on October 2, 2018, to a term of life in prison. On October 4, 2018, he filed a notice of appeal.

Enamorado raised numerous claims on direct appeal, several of which coincide with the arguments he now asserts in his motion to vacate: that a co-defendant's closing argument unconstitutionally prejudiced his own defense; that the Court inappropriately applied the first-

degree murder guideline when the jury did not specifically find that petitioner had committed first-degree murder; that the jury instructions misstated what the government needed to prove under § 1962(d); and that the Court incorrectly responded to two questions asked by the jury during their deliberations.  On July 26, 2021, the First Circuit affirmed the judgment, finding that Enamorado's "challenges [did] not have merit."  *United States v. Pérez-Vásquez*, 6 F.4th 180, 186 (1st Cir. 2021).[1]

On January 3, 2023, Enamorado filed a letter with this Court "request[ing] an extension" for the time to file his § 2255 motion, because he "[did not] have access to [his] personal property or legal materials" and because "law library access [was] very limited."  (ECF No. 3305, 1).[2]  The Court construed the letter to be, in effect, "seek[ing] equitable tolling of the limitations period."  (ECF No. 3308, 1).  Because Enamorado had not yet filed a § 2255 motion, however, the Court denied the request without prejudice.  The Court wrote:  "If or when [Enamorado] actually files a § 2255 petition, this court may consider his argument that such a petition should be considered timely.  Until then, it lacks jurisdiction to consider the matter." *Id.* at 2-3 (internal punctuation marks and citation omitted).

On June 19, 2023, Enamorado filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[3]  He simultaneously filed a motion to appoint counsel.  On April 10, 2024, the government filed an opposition to the motion to vacate.

---

[1] On October 25, 2021, Enamorado filed a petition for a writ of certiorari to the U.S. Supreme Court.  The petition was denied on February 28, 2022.

[2] Petitioner also attached to his letter a memorandum from the Federal Bureau of Prisons noting that he was part of a group of inmates transferred to USP Lewisburg who were experiencing "delays in receiving, securing, inspecting and issuing property."  (ECF No. 3305, Ex. 1).

[3] Although petitioner's motion was not received by the Court until June 26, 2023, he certified that he put his motion in the prison mail system on June 19.  Therefore, for purposes of the present motion, the Court will assume that it was filed on June 19, 2023.  *See Morales-Rivera v. United States*, 184 F.3d 109, 109 (1st Cir. 1999) (establishing that "a pro se prisoner's motion under 28 U.S.C. § 2255 or § 2254 is filed on the date that it is

## II.     Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence.  The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255.  *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). In deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### A.     Period of Limitation and Equitable Tolling

Congress has established a one-year limitation period governing motions for relief under § 2255.  28 U.S.C. § 2255(f).  The one-year period runs from the latest of one of four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

deposited in the prison's internal mail-system for forwarding to the district court, provided that the prisoner utilizes, if available, the prison's system for recording legal mail").

*Id.*

A court may extend the one-year limitation period if equitable tolling applies. A petitioner bears the burden of demonstrating the basis for equitable tolling by making two showings: "1) that he has been pursuing his rights diligently, and 2) that some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa v. United States*, 2012 WL 6626646, at *3 (D. Mass. Dec. 18, 2012) (quoting *Ramos-Martinez v. United States*, 638 F. 3d 315, 322-23, 325 (1st Cir. 2011)).

## B. Procedural Bars

A petitioner in a motion filed pursuant to § 2255 cannot reassert arguments that he raised on direct appeal. As the First Circuit held in *United States v. Doyon*, "[t]o the extent that [petitioner] is reasserting the argument that he made on direct appeal, he is barred from relitigating that issue on collateral review." *Doyon*, 16 F. App'x 6, 9 (1st Cir. 2001) (citing *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir.1994)). To the extent that a petitioner intends to "add new elements to his constitutional claim that he failed to raise on direct appeal, [petitioner] is required to show cause for the failure and actual prejudice." *Id.*

## C. Ineffective Assistance of Counsel

A petitioner claiming a violation of the Sixth Amendment right to effective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on such a claim, a petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result. *Id.*

The first prong requires a petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 689. A court making that evaluation "must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007). The second prong requires petitioner to show that counsel's deficient performance resulted in "prejudice"— that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### III.   Analysis

#### A.   Period of Limitation and Equitable Tolling

Petitioner's motion is not timely under any of the four prongs of § 2255(f). As to the first prong, a conviction becomes final when either the Supreme Court denies a writ of certiorari or when the time to file such a writ expires. *Clay v. United States*, 537 U.S. 522, 525 (2003). Here, the Supreme Court denied the petition for a writ of certiorari on February 28, 2022. Petitioner filed his motion on June 19, 2023, approximately one year and four months after his judgment became final. Therefore, the motion is untimely by approximately four months. *See* 28 U.S.C. § 2255(f)(1).

As to the second prong, petitioner does not contend that governmental action in violation of the Constitution or laws of the United States created an impediment to making his motion. As to the third prong, petitioner does not contend that he is asserting any right newly recognized by the Supreme Court. As to the fourth prong, petitioner does not contend that any of the facts supporting his claim were newly discovered or could have been previously discovered through the exercise of due diligence. Therefore, the second, third, and fourth prongs of § 2255(f) are not relevant.

A court may extend the one-year limitation filing period under a theory of equitable

tolling if a petitioner shows that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa v. United States*, 2012 WL 6626646, at *3 (D. Mass. Dec. 18, 2012) (quoting *Ramos-Martinez v. United States*, 638 F.3d 315, 322-23, 325 (1st Cir. 2011)).

No such equitable tolling is warranted here. In his § 2255 motion, petitioner alleges that on "January 31, 2022, the Federal Prisons went into a nationwide lock-down which culminated in all MS-13 inmates [being] placed in [segregated] confinement." (ECF No. 3331, 11). Petitioner further alleges that on "March 17, 2022, [he] was transferred to USP Lewisburg," where he "was denied access to his personal property/legal materials." *Id.* According to the motion, petitioner did not receive his property back until March 2023. *Id.*

Even assuming that petitioner has been pursuing his rights diligently since his conviction became final in February 2022, he has not demonstrated "extraordinary circumstances," because he has failed to explain how the lack of access to his personal belongings "caused the untimely filing." *See Good v. Gray*, 2022 WL 2704467, at *4 (D. Mass. July 12, 2022); *see also Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("[T]he usual problems inherent in being incarcerated do not justify equitable tolling."). Becuase equitable tolling is "the exception rather than the rule," *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir. 2001), petitioner's unparticularized claim of extraordinary circumstances is insufficient to justify equitable tolling. *See, e.g.*, *Hisert v. Blue Waters Dredging*, LLC et al., 2021 WL 1178301, at *1 n.1 (D. Mass. Mar. 29, 2021) (noting that the First Circuit dismissed a cross-appeal on timeliness grounds even though plaintiff contended that the COVID-19 pandemic justified his untimely filing, because he did not "show[] any *specific* impediment to timely filing that would warrant equitable relief") (emphasis added).

In summary, petitioner filed the motion to vacate after the limitation period expired, and cannot show that the period should be extended because of equitable tolling. His claims are therefore time-barred.

### B. Procedural Bars

Even if petitioner's § 2255 motion were not time-barred, four of the eight claims put forward in his motion are procedurally barred. As the First Circuit has established, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994). That rule also applies when a petitioner attempts to "repackage" a claim litigated on direct appeal as an ineffective-assistance-of-counsel claim in a § 2255 motion. *United States v. Watson*, 98 F. Supp. 3d 225, 234 (D. Mass. 2015).

In his § 2255 motion, petitioner contends:

> The district court instructed the jury that to prove a RICO conspiracy the government must show that "the defendant or another member of the conspiracy agreed to commit at least two racketeering acts." These instructions improperly instructed the jury that it could convict [petitioner] regardless of if he knew the conspiracy would involve the commission of at least two racketeering acts. Counsel's failure to object rendered deficient performance which prejudiced Enamorado because the instruction permitted the jury to convict using an erroneous instruction.

(ECF No. 3331, 4). In his First Circuit brief, petitioner similarly asserted: "The first error is the judge's instruction that the jury could convict Enamorado if 'another member of the conspiracy agreed to commit at least two predicate acts' even if Enamorado did not know about that agreement to commit the two predicate acts." Brief and Addendum of the Defendant-Appellant Hector Enamorado, *United States v. Pérez-Vásquez*, 6 F.4th 180 (1st Cir. 2021) (No. 19-1734), 2019 WL 4855503, at *63. The First Circuit evaluated that claim on the merits and found against petitioner, explaining that the challenged instruction "accurately conveyed that if

7

Enamorado agreed to join a conspiracy in which coconspirators had agreed to do two or more acts, then Enamorado himself need not have done those acts." *Pérez-Vázquez*, 6 F.4th at 203.

In his § 2255 motion, petitioner also asserts:

> The Court used the first degree murder guideline. But when it instructed the jury it only instructed on . . . second-degree murder elements. When the Court decided to only instruct on second-degree murder, the Court lowered the burden of proof for the Government's case because the Government submitted a first-degree murder charge against [petitioner]. Therefore, when the Court used the first-degree murder guideline during sentencing it erred. The jury only found second-degree murder elements, the district court submitted only second-degree murder elements, although the Government submitted the case of first-degree to the jury. Because the Court only submitted "second-degree murder," it was bound to use [the] second-degree murder guideline. Otherwise the court would be making a constructive amendment.

(ECF No. 3331, 15). In his brief for the First Circuit, petitioner raised substantially the same argument: "The jury should have decided the degree of murder based on a standard of beyond a reasonable doubt, not the district court by a preponderance of the evidence." Brief and Addendum, 2019 WL 4855503, at *80. The First Circuit rejected that claim on the merits, finding that petitioner's argument was "foreclosed" by its decision in *United States v. Gonzalez*, 981 F.3d 11 (1st Cir. 2020). *Pérez-Vásquez*, 6 F.4th at 204. In that case, the First Circuit held that the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), holding that "any fact that necessitates an increase in the mandatory minimum sentence for a crime . . . must be found by the jury beyond a reasonable doubt," "does not preclude judicial factfinding undertaken for purposes of constructing a defendant's advisory guideline sentencing range." *Gonzalez*, 981 F.3d at 16. That claim, then, was also disposed of on petitioner's direct appeal.

Petitioner asserts another ground in his § 2255 motion based on a co-defendant's closing argument:

> Counsel of [co-defendant] conceded that [co-defendant] brought a gun to [petitioner] and that [co-defendant] could not be found guilty because he didn't

8

> share the intent that [petitioner] had at the time he discharged the weapon into Mr. Javier Ortiz. Because counsel failed to object and ask the Court for a limiting instruction or curative instruction, counsel was deficient. Counsel's deficient performance prejudiced [petitioner] because the jury was left with the statement that [petitioner] was or had the intent to murder Javier Ortiz.

(ECF No. 3331, 16). In his brief in the First Circuit, petitioner raised this same argument: "Reversal is required because of the resulting prejudice from the co-defendant Perez-Vasquez's attorney confessing to the Ortiz incident during closing argument at a joined trial, admitting that Perez-Vasquez (aka Crazy) gave Enamorado the gun, his throat probably would have been cut if he did not give Enamorado the gun, and that Enamorado had an intent to kill Ortiz, and that Enamorado killed Ortiz." Brief and Addendum, 2019 WL 4855503, at *30-31. The court rejected that claim on the merits: "We do not think a reasonable jury would have concluded that this argument was actually a confession by Pérez-Vásquez stating that a different defendant, Enamorado, was guilty of RICO conspiracy." *Pérez-Vásquez*, 6 F.4th at 200. The court further noted that the jury was instructed that "lawyers are not witnesses. What they say in their . . . closing arguments . . . is not evidence." *Id.* at 201. Therefore, the First Circuit held that "the district court did not manifestly abuse its discretion in denying the motion for a mistrial based on Pérez-Vásquez's closing argument." *Id.*

Finally, petitioner claims that "[i]n the Court's instructions describing 'pattern of racketeering activity,' the Court failed/omitted [to include] that the two racketeering acts needed to be separate acts." (ECF No. 3331, 7). Although petitioner frames that claim as one of "ineffective assistance," it is more properly read as a substantive challenge to the jury instructions themselves, because it does not rest on any actions or omissions by petitioner's counsel. Here, petitioner seeks to assert a claim that he could have brought on direct appeal but did not. "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate

9

cause for the failure and prejudice or actual innocence." *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir. 2002) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Petitioner does not attempt to make such a showing in support of this claim.  (ECF No. 3331, 7).

In sum, petitioner here raises three of the same grounds he raised on direct appeal.  The First Circuit determined that each of those claims was without merit.  He therefore cannot relitigate them, even though he attempts to repackage them as ineffective assistance of counsel claims.  Furthermore, he raises one claim that he could have brought on direct appeal but did not, with no explanation of why he did not do so.  Accordingly, these four claims are procedurally barred in addition to being time-barred.

### C. Ineffective Assistance of Counsel

Petitioner asserts four further claims in his § 2255 motion that are not procedurally barred.[4]  He asserts that (1) his attorney should have objected to the Court's response to questions from the jury during deliberations; (2) his attorney should have objected to what petitioner says was the jury instruction stating that a defendant who intentionally uses a dangerous weapon against someone intends to kill that person; (3) his attorney failed to investigate, develop, and present evidence, specifically concerning discovery received in petitioner's state-court murder case; and (4) his attorney failed to present mitigating factors at sentencing.  None of those grounds constitutes a denial of his Sixth Amendment right to effective counsel.

#### 1. Failure to Object to Court's Response to Jury Questions

During deliberations, the jury posed two questions to the Court.  The first was "Is it required to prove that the defendant is a gang member in order to be associated with MS-13? . . .

---

[4] As noted, however, these four claims are time-barred.

[W]hat is the definition of an associate of MS-13?" *Pérez-Vásquez*, 6 F.4th at 203.  The Court answered: "[N]o. The real issue is not whether a particular defendant is a full member of a gang, rather, the focus should be on the conspiracy and the agreement that is at the heart of the conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity." *Id.*  The second question was "Does evidence of the defendant's association with MS-13 have to predate the specific racketeering acts charged in the indictment?" *Id.*  The Court answered: "[N]o. Again, the focus should be on the conspiracy and the agreement at the heart of the conspiracy.  No specific racketeering acts need be committed at all." *Id.*  Both answers were crafted "in response to and in the presence of defense counsel." *Id.*  When the Court read the final version of the answers to both parties and asked whether they were satisfied, petitioner's counsel responded "yes." *Id.*  Because counsel failed to object at trial, the First Circuit did not consider the merits of petitioner's claim. *See id.*

In his § 2255 motion, petitioner does not allege with particularity why his trial counsel was deficient in failing to object to these answers; instead, he appears to claim that his counsel's failure to object was *per se* deficient performance.  Petitioner argues that he was prejudiced by his counsel's failure to object because "it permitted the jury to convict on a lower burden of proof which amounted to a constructive amendment."  (ECF No. 3331, 5).

Under the two-prong test of *Strickland*, to show deficient performance petitioner must show that his counsel's performance "fell below an objective standard of reasonableness under the circumstances." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007).  A court's review of counsel's performance is highly deferential, and counsel "benefits from a strong presumption that he or she rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions." *Id.* at 38-39.  If the court's response to a jury question

correctly stated the applicable law, petitioner cannot show deficient performance because it is objectively reasonable for counsel not to object to a correct statement of the law. *See, e.g.*, *Nutter v. United States*, 2010 WL 3001175, at *4 (D. Mass. July 27, 2010) (finding no deficient performance in failure to object to jury instructions which "tracked well-tested and established law").

Petitioner cannot show deficient performance because each of the Court's responses correctly stated the law for the jury to apply. With respect to the first question, the government was required to prove that "the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense." *United States v. Rodriguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019). The Court's response appropriately directed the jury to look to the agreement that constituted the conspiracy rather than the specific structure of the MS-13 gang.

The Court's response to the second question also appropriately stated the law. The government was required to prove beyond a reasonable doubt that petitioner "agreed that at least two acts of racketeering would be committed in furtherance of the conspiracy." *United States v. Sandoval*, 6 F.4th 63, 75 (1st Cir. 2021). The Court's response correctly explained that element by directing the jury to consider whether petitioner entered into the alleged agreement. As the First Circuit has recognized, 18 U.S.C. § 1962(d) "does not require the government to prove that the charged acts of racketeering were actually committed by either the defendant charged with the conspiracy or by others." *Sandoval*, 6 F.4th at 77 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). The relevant inquiry, then, is not when petitioner entered into the conspiracy in relation to when the racketeering acts charged in the indictment occurred. Instead, the question is whether, when petitioner joined the conspiracy, he "agreed to facilitate a scheme in which a

conspirator would commit at least two [racketeering] acts." *Rodriguez-Torres*, 939 F.3d at 29. The Court's answer to the second question directed the jury to "focus . . . on the conspiracy and the agreement at the heart of the conspiracy." That answer correctly stated the law that the jury was to apply. Thus, petitioner cannot show that his counsel's failure to object to these responses was objectively unreasonable under the circumstances.

Furthermore, petitioner cannot show the requisite level of prejudice as a result of his counsel's failure to object to the Court's answers to the jury questions. Because the Court correctly stated the law, there is no reasonable probability that "the result of the proceeding would have been different" had counsel objected. *Strickland*, 466 U.S. at 694.

In summary, petitioner cannot demonstrate either deficient performance or prejudice as a result of his counsel's failure to object to the Court's responses to the jury questions. Accordingly, petitioner cannot demonstrate ineffective assistance of counsel on that basis.

### 2. Failure to Object to Jury Instructions

Petitioner next contends that "the court's instruction that permit[ted] the jury (although not required) to infer that a defendant which intentionally uses a dangerous weapon against someone else, has the intent to kill that person . . . incorrectly permit[ted] the jury to infer intent from the use of a dangerous weapon." (ECF No. 3331, 8). He alleges that because the jury instruction was incorrect, his "[c]ounsel's failure to object rendered deficient performance."

It is well-established under Massachusetts law, however, that "the jury [is] permitted to infer an intent to kill from the use of a dangerous weapon." *Commonwealth v. Colas*, 486 Mass. 831, 842 (2021); *Commonwealth v. Toolan*, 490 Mass. 698, 710 (2022); *see also* 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 14.2(b) (3d ed. 2023) (noting broad acceptance of "deadly-weapon doctrine" across states). Such instructions are improper only where they compel the jury to presume intent based on the use of a deadly weapon, not where they are

phrased in a way that suggests a permissive inference that the jury may, but is not required, to make. *See Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).

The jury instructions here correctly stated the law. The Court instructed the jury: "You are permitted (but not required) to infer that a defendant who intentionally uses a dangerous weapon on another person intends to kill that person." (ECF No. 2691, 173). That instruction properly allowed the jury to infer petitioner's intent to kill based on his use of a firearm without requiring the jury to make such an inference. Because the jury instruction correctly stated the law, it was objectively reasonable for petitioner's trial counsel not to make a futile objection. *See Nutter*, 2010 WL 3001175, at *4.

Similarly, because the jury instruction correctly stated the law, any objection made by trial counsel would have been overruled by the Court. Therefore, petitioner cannot show "a reasonable probability that . . . the result of the proceeding would have been different" if his counsel had objected, as required to show prejudice under *Strickland*. *See* 466 U.S. at 694.

Because petitioner can show neither deficient performance nor prejudice as a result of his counsel's failure to object to the jury instruction, he cannot demonstrate that he received ineffective assistance of counsel on that basis.

### 3. Failure to Investigate, Develop, and Present Evidence

Next, petitioner contends that his trial counsel rendered ineffective assistance by failing to "investigate, develop, and present evidence." (ECF No. 3331, 13). Specifically, he alleges that he received discovery in connection with his state-court trial for the Ortiz murder that "contradicted the evidence in the federal case." *Id.* Therefore, he argues, his "[c]ounsel was ineffective for failing to investigate, develop, and present evidence that is favorable to [petitioner's] innocence." *Id.*

*Strickland*'s performance prong includes a "duty to investigate." *See Alix v. Marchilli*,

14

406 F.Supp.3d 161, 174 (D. Mass. 2019) (quoting *Strickland*, 466 U.S. at 690-91); *Saint-Vil v. Alves*, 2023 WL 3868433, at *4 (D. Mass. June 7, 2023).  At the same time, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste," *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Here, regardless of whether counsel's performance was deficient, petitioner cannot show prejudice, because the evidence of his guilt at trial was overwhelming.  At trial, multiple witnesses identified petitioner as a member of MS-13, and Trooper O'Connor testified that petitioner himself admitted to being a member of MS-13 during a post-arrest interview.  (ECF No. 2679, 54; ECF No. 2680, 40; ECF No. 2683, 35, 41-44, 110, 112; ECF No. 2687, 143).  Furthermore, multiple witnesses identified petitioner as the person who shot and killed Javier Ortiz—including Saul Rivera, who was also shot by petitioner that same night.  (ECF No. 2683, 114-16; ECF No. 2686, 58-60, 87; ECF No. 2687, 39).  Given the evidence supporting petitioner's guilt, including multiple eyewitnesses to his murder of Ortiz, petitioner cannot show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Therefore, petitioner cannot demonstrate that he received ineffective assistance of counsel on that basis.

### 4. Failure to Present Mitigating Factors at Sentencing

Finally, petitioner contends that he received ineffective assistance of counsel at sentencing because his attorney "failed to object or present mitigating factors that warrant a lower sentence"; "failed to highlight the fact that [petitioner] could receive a sentence lower than life"; and "failed to object to the Judge's finding that a mandatory life sentence was appropriate in [petitioner]'s case."  (ECF No. 3331, 14).

The record is clear, however, that counsel's performance at sentencing did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689.  Petitioner's counsel

prepared a sentencing memorandum in which he objected to the pre-sentence report's calculation of petitioner's offense level under the Sentencing Guidelines; objected to the pre-sentence report's calculation of petitioner's criminal history category; and argued that consideration of the 28 U.S.C. § 3553(a) factors supported the imposition of a sentence of 240 months rather than life. (ECF No. 2744, 2-6). Petitioner's counsel also attached to the memorandum numerous letters of support from petitioner's family and associates. (ECF No. 2744, Ex. 1). At the sentencing hearing, counsel renewed his objections and presented further mitigating factors on petitioner's behalf, including that he was "a father [and] a husband," "had been a good provider for" his family, "ha[d] a solid work history," and that he "continue[d] to deny being an MS-13 member." (ECF No. 2770, 18-20).

Thus, contrary to petitioner's assertions, his counsel did present mitigating factors and highlighted the fact that he could receive a sentence lower than life. Where counsel "raise[s] several reasonable objections to the presentence report, file[s] a comprehensive sentencing memorandum, and zealously advocate[s] on petitioner's behalf," his performance is not deficient. *See Valentin v. United States*, 422 F. Supp. 3d 433, 435 (D. Mass. 2019).

Furthermore, even if petitioner's counsel's performance had been deficient, he cannot show prejudice under *Strickland*. To show prejudice based on counsel's alleged deficient performance at sentencing, a petitioner must establish that "but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence." *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (quoting *Porter v. McCollum*, 558 U.S. 30, 41 (2009)). At sentencing, the Court found "by a preponderance of the evidence standard that the appropriate guideline [was] 2A1.1 for first-degree murder," noting that there was "overwhelming evidence that [petitioner's] murder of Ortiz was premeditated." (ECF No. 2770, 11). Therefore,

petitioner's guideline sentence range was life in prison, and any mitigating evidence would have had to justify a downward departure from the guideline range. But the Court noted three factors that counseled against a downward departure: (1) petitioner was "in his mid-30's" when the offenses occurred; (2) he was responsible for both a murder and an attempted murder, and that the attempted murder was "about as close as you can come to murdering someone without actually killing that person"; and (3) he "did not accept responsibility." (*Id.* at 23). The Court acknowledged the mitigating factors presented by petitioner's counsel, saying that it did not "doubt that [petitioner] loved his children, that in his own way that he was perhaps a good father to them, that when he worked, he had employment and was perhaps working hard." (*Id.*). Still, considering all of petitioner's conduct, the Court "[did not] have the slightest doubt" that a life sentence was appropriate. (*Id.*). Considering the overwhelming evidence that supported a sentence of life imprisonment, petitioner cannot show a "reasonable probability" that, had his counsel acted differently, he would have received a different sentence. *Peralta*, 597 F.3d at 79.

Therefore, because petitioner cannot show either deficient performance or prejudice based on his counsel's actions at sentencing, he cannot demonstrate ineffective assistance of counsel on that basis.[5]

## IV.  Conclusion

For the foregoing reasons, the motion of petitioner Hector Enamorado to vacate, set

---

[5] Petitioner makes a related claim that the statutory maximum sentence for a conviction under 18 U.S.C. § 1962(d) is 20 years, and that his trial counsel was ineffective for failing to raise that maximum to the court. (ECF No. 3331, 14). However, 18 U.S.C. § 1963, which sets forth the criminal penalties for a violation of § 1962, clearly provides that the statutory maximum is life imprisonment, "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). Because the statutory maximum sentence for murder in Massachusetts is life imprisonment, *see* Mass. Gen. Laws ch. 265, § 2, the statutory maximum sentence for petitioner under 18 U.S.C. § 1962(d) was also life imprisonment.

aside, or correct his sentence is DENIED.  Petitioner's motion to appoint counsel is DENIED as moot.

**So Ordered.**

                                        /s/ F. Dennis Saylor IV
                                        F. Dennis Saylor IV
                                        Chief Judge, United States District Court

Dated:  April 16, 2024